IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

| | |
|---|---|
| **DUSTIN W. HINCKLE**,<br><br>Petitioner,<br><br>v.<br><br>**UNITED STATES OF AMERICA**,<br><br>Respondent. | **CIVIL ACTION NO.: 3:18-CV-102**<br>**CRIMINAL ACTION NO.: 3:15-CR-27**<br>**(GROH)** |

## REPORT AND RECOMMENDATION

### I.      INTRODUCTION

This case arises from Dustin Wade Hinckle's ("Petitioner") *pro se* Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. ECF Nos. 111, 116.[1] Because Petitioner's claims are without merit, the undersigned recommends that Petitioner's motion be denied and dismissed with prejudice.

### II.     FACTS & PROCEDURAL HISTORY

**A. Petitioner's Conviction, Sentence, and Appeal**

On July 21, 2015, Petitioner was indicted in a two-count indictment in the Northern District of West Virginia, charging him with felon in possession of firearms in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2) and possession of a stolen firearm in violation of Title 18, United States Code, Sections 922(j) and 924(a)(2). ECF No. 1. On January 13, 2016, a jury convicted Petitioner on both counts. ECF No. 55. On

---

[1] All references to document numbers refer to criminal case number 3:15-CR-27.

1

April 25, 2016[2], the Court sentenced Petitioner to 120 months of imprisonment on each count, to run concurrently with each other, but consecutively to any anticipated state sentence. ECF No. 66. Additionally, Petitioner was sentenced to supervised release for three years. Id.  An amended judgment was entered April 28, 2016, which did not alter the sentence or period of supervised release. ECF No. 68.

On May 3, 2016, Petitioner filed a timely notice of appeal. ECF No. 70. Petitioner raised four issues before the Fourth Circuit Court of Appeals. First, Petitioner "argue[d] that the district court erred when it denied his Fed. R. Crim. P. 29 motion for judgment of acquittal." ECF No. 79 at 2. Second, Petitioner "argue[d] that the district court erred in qualifying a law enforcement agent as an expert on the interstate nexus of the firearms." Id. at 3. Third, Petitioner "challenge[d] the district court's denial of one of his objections to his presentence report." Id. Finally, Petitioner "contest[ed] the reasonableness of his sentence." Id. at 4. On December 21, 2016, the Fourth Circuit Court of Appeals rejected the four issues raised on appeal and affirmed the district court's judgement. Id. at 5. On May 16, 2017, Petitioner filed a writ of certiorari[3] with the United States Supreme Court, in that Court's docket 16-9231, and on June 26, 2017, the petition was denied. ECF Nos. 87, 93.

---

[2] The Court imposed judgment on April 25, 2016; however, the judgement order was not entered by the Court or filed by the Clerk until August 27, 2016. ECF No. 66.

[3] The Court notes that the district court Clerk did not file copes of these document until Mat 31, 2017, upon receipt of a May 19, 2017, letter from the Clerk of the Supreme Court.

2

**B. Petitioner's § 2255 Motion**

On June 27, 2018, Petitioner filed a timely motion to vacate pursuant to § 28 U.S.C. 2255.[4] ECF No. 111. Petitioner refiled his motion on the Court-approved form on July 13, 2018. ECF No. 116. Petitioner asserts four grounds for relief. First, Petitioner argues that the "District Court erred in denying [Petitioner's] Rule 29 Motion to Dismiss" because "the government's evidence was insufficient that [Petitioner] had actual or constructive possession" of the firearms. ECF No. 116 at 5, 16. Second, Petitioner argues that he was denied effective assistance of counsel because counsel did not request lab work, DNA, or finger prints to be taken from the weapon; did not request a particular ATF agent to testify; failed to file a motion to dismiss the indictment due to alleged "fraudulent statements;" and failed to present evidence that Petitioner was not the suspect who stole the cruiser. Id. at 6, 17. Third, Petitioner contests that the "District Court erred when no time served was granted when [he was] in active U.S. Marshal custody." Id. at 8, 17. Fourth, Petitioner challenges that the Government presented insufficient evidence to convict him and that he was "wrongly convicted on mere presence only." Id. at 9, 18. Petitioner requests that his "sentence be vacated due to ineffective assistance of the defense counsel." Id. at 18. Further, Petitioner asks for his "sentence to be corrected and the time in which [Petitioner] was in U.S. Marshal custody be added as time served toward his sentence." Id.

The Government responded to each of these grounds respectively stating that: (1) the first ground was fully litigated on appeal, and Petitioner may not relitigate the claim; (2)

---

[4] On the same date Petitioner filed his original motion to vacate, Petitioner received a Notice of Deficient Pleading from the Clerk's Office informing him that he needed to complete his motion on the court approved form. ECF No. 114. On July 13, 2018, Petitioner filed his motion on the court approved form. ECF No. 116.

3

Petitioner has not demonstrated in the second ground that defense counsel's representation was ineffective under Strickland v. Washington, 466 U.S. 668 (1984); (3) Petitioner's third ground was not raised on direct appeal, so it is waived, and to the extent the third ground is the same as the fourth argument on appeal, Petitioner is precluded from raising this claim; and (4) Petitioner's fourth ground was not raised on direct appeal, so it is waived. ECF No. 125 at 3-6.

### III.   DISCUSSION

#### A.  Legal Standard

Pursuant to 28 U.S.C. § 2255, a prisoner may file a motion challenging the sentence imposed by a federal court, "if (1) the sentence violates the Constitution or laws of the United States; (2) the sentencing court lacked jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum; or (4) the sentence 'is otherwise subject to collateral attack.'" Beyle v. United States, 269 F. Supp. 3d 716, 725 (E.D. Va. 2017) (quoting 28 U.S.C. § 2255(a)). "A sentence is 'otherwise subject to collateral attack,' if a petitioner shows that the proceedings suffered from 'a fundamental defect which inherently results in a complete miscarriage of justice.'" Id. (quoting United States v. Addonizio, 442 U.S. 178, 185 (1979)). "A petitioner bears the burden of proving one of those grounds by a preponderance of the evidence." Id. (citing Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958)). "If he satisfies that burden, the court may vacate, set aside, or correct the sentence." Id. (citing 28 U.S.C. § 2255(b)). "However, if the motion, when viewed against the record, shows that the petitioner is entitled to no relief, the court may summarily deny the motion." Id. (citing Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970)).

**B. Petitioner's Motion to Dismiss Claim is Precluded from Review**

Federal prisoners may not use a § 2255 petition to relitigate questions that were raised and considered on direct appeal. United States v. Linder, 552 F.3d 391, 396 (4th Cir. 2009); citing United States v. Sanin, 252 F.3d 79, 83 (2nd Cir. 2001).

On appeal, Petitioner argued "that the district court erred when it denied his Fed. R. Crim. P. 29 motion for judgment of acquittal." ECF No. 79 at 2. This issue was fully litigated on appeal, and the Fourth Circuit denied the appeal and affirmed the district court's judgment. Id. at 5. Petitioner has not alleged any extraordinary circumstances warranting review. Accordingly, Petitioner's first ground for relief is precluded from review under a § 2255 petition because this issue was fully litigated on direct appeal. See Linder 552 F. 3d 396.

**C. Petitioner's Ineffective Assistance of Counsel Claim is Without Merit**

It is well established that the Sixth Amendment guarantees defendants the right to effective assistance of counsel. McMann v. Richardson, 397 U.S. 759, 771, n. 14 (1970). To succeed on an ineffective assistance of counsel claim, the "petitioner must show, by a preponderance of the evidence, that (1) 'counsel's performance was deficient,' and (2) 'the deficient performance prejudiced the defense.'" Beyle, 269 F. Supp. 3d at 726 (quoting Strickland v. Washington, 466 U.S. 668, 687 (1984)). "The Petitioner must 'satisfy both prongs, and a failure of proof on either prong ends the matter.'" Id. (quoting United States v. Roane, 378 F.3d 382, 404 (4th Cir. 2004)). "Unsubstantiated and largely conclusory statements are insufficient to carry a petitioner's burden as to the two prongs of this test." Id. (cleaned up).

A petitioner satisfies the first prong when he shows that counsel's conduct "fell below an objective standard of reasonableness . . . under prevailing professional norms." Strickland, 466 U.S. at 687–88. However, "[j]udicial scrutiny of counsel's performance must be highly deferential" because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance…" Id.

To satisfy the second prong, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. In doing so, a petitioner must demonstrate that the error worked to his actual and substantial disadvantage, not merely that the error created a possibility of prejudice." Beyle, 269 F. Supp. 3d at 727 (internal citations and quotations omitted).

Petitioner claims he was denied effective assistance of counsel and identifies four issues where he contends this occurred. ECF Nos. 111 at 5, 116 at 6.

First, Petitioner claims that counsel failed to request lab work, DNA, or fingerprints to be taken from the weapons. ECF No. 116 at 17. Petitioner fails to provide any factual basis for the undersigned to conclude that failing to request this information fell below the objective standard of reasonableness. However, during trial, defense counsel used the fact that there was no fingerprint or DNA analysis performed on the weapons. During the cross examination of Troopers Smith and Hill, Cpl. Garrett, and ATF Agent Lockhart,

defense counsel elicited testimony that neither fingerprints nor DNA analysis were conducted on the weapons, and therefore, the Government lacked this evidence in its case. See ECF No. 76 at 179-180, 218, 231-232, 240. Defense counsel not requesting fingerprints or DNA analysis is a trial strategy because there is a possibility that Petitioner's fingerprints may have appeared on the weapons, which would have been unfavorable to Petitioner's case.

On the other hand, based on Trooper Smith's testimony, the weapons were not preserved in evidentiary custody but instead returned to Trooper Smith on May 12, 2015, the same day as the crime. Therefore, defense counsel not requesting fingerprint or DNA analysis nearly seven months after the crime does not fall below an objective standard of reasonableness because the weapons were not preserved. Additionally, Petitioner fails to show how by not requesting this information, he was prejudiced. Accordingly, this claim fails to meet either prong of Strickland.

Second, Petitioner claims that counsel was ineffective by failing to call ATF Agent Cox as a defense witness. ECF No. 116 at 17. Petitioner provides a limited factual basis to substantiate his claim. For example, Petitioner appears to argue that Agent Cox should have been called as a defense witness solely to impeach him based on his grand jury testimony. Id. However, Petitioner fails to provide any explanation as to what Agent Cox's grand jury testimony was, how defense counsel's decision to not call Agent Cox to testify fell below an objective standard of reasonableness, or how Petitioner was prejudiced by this decision.

Regardless, defense counsel's "decision to call a particular witness is almost always strategic, requiring a balancing of the benefits and risks of the anticipated

7

testimony." Jackson v. United States, 638 F. Supp. 2d 514, 550 (W.D. N.C. 2009). Since the decision to not call a witness could reasonably be viewed as legitimate trial strategy, it "does not constitute ineffective assistance unless counsel's decision was so patently unreasonable that no competent attorney would have made it." Id.

On the Government's witness list, it was disclosed that Agent Cox could "testify to the facts surrounding the investigation." ECF No. 28 at 1. Trooper Smith, Deputy Barney, and Cpl. Garrett, who were also on the Government's witness list and who all testified at trial, were also identified as being able to testify as to the facts surrounding the investigation. Id.; ECF Nos. 34; 39. Despite being identified as a potential witness, the Government chose not to call him.

But, defense counsel also chose not to call Agent Cox as a witness and Petitioner has failed to show how not calling him was deficient. Petitioner failed to identify how Agent Cox's grand jury testimony was fraudulent and his allegations are unsubstantiated and largely conclusory. Again, Petitioner has failed to meet his burden under Strickland.

Third, Petitioner alleges counsel failed to file a motion to dismiss the indictment. Id. However, the basis for this claim is incomplete because Petitioner has not offered a factual basis to support a motion to dismiss, failed to articulate what testimony was fraudulent, or identified how he was prejudiced by the alleged fraudulent statements. Therefore, Petitioner fails to meet to meet either prong of Strickland.

Fourth, Petitioner argues that "counsel failed to present evidence to prove [Petitioner] was not the suspect that stole the [West Virginia] cruiser…" Id. Again, Petitioner's allegation lacks a factual basis and is unsubstantiated and conclusory.

8

To the contrary, Trooper Smith testified that Petitioner was the suspect who stole his cruiser. He testified that he initiated a traffic stop on the vehicle in which Petitioner was a passenger. ECF No. 76 at 125. He placed Petitioner in custody in the rear passenger seat of his cruiser because of an outstanding warrant. Id. While Trooper Smith returned to the driver of vehicle, he heard the engine rev on his cruiser and saw Petitioner driving it. Id. at 129. His eye witness account of the events established Petitioner as a suspect.

Ultimately, it is defense counsel's strategic decision to focus on contesting the possession of the firearms rather than arguing whether there is evidence that Petitioner stole the cruiser. His decision not to focus the defense on this issue does not equate to defense counsel's performance being deficient. Nevertheless, Petitioner fails to show how he was prejudiced by defense counsel's performance and has failed to meet either prong of Strickland.

### D. Petitioner's Time Served Claim is not Cognizable under § 2255

Petitioner argues that the "District Court erred when no time served was granted when in active U.S. Marshal custody." ECF No. 116 at 8. Petitioner states that "[o]n November 6, 2015 [Petitioner] made his initial appearance before Magistrate Judge Robert W. Trumble and was remanded to the custody of the U.S. Marshal Service." Petitioner claims that when he was sentenced on April 25, 2016, he should have received credit for time served from the time of his initial appearance. Id. at 17.

Although it appears Petitioner is seeking relief based on the computation of his sentence, which is intended to be addressed in a § 2241 petition, it is important to note that when the Amended Judgment was entered on April 28, 2016, Petitioner was given

credit for time served from May 12, 2015, to the present. See ECF No. 68 at 2. As such, Petitioner has been given credit for the time he has served in either state or federal custody from the date of his arrest, and accordingly, his claim lacks merit. Again, Petitioner has failed to show that this is a cognizable claim for relief under § 2255 or that a miscarriage of justice has occurred.

### E. Petitioner's Mere Presence Claim is Without Merit

Petitioner alleges that he "was wrongly convicted on mere presence only." ECF No. 116 at 9. Specifically, Petitioner appears to argue that the Government failed to show that Petitioner was in actual or constructive possession of the firearms and that insufficient evidence invalidates his conviction. Id. at 18. Petitioner does not provide any additional facts to support his argument.

Under the doctrine of procedural default, claims asserting trial errors, that could have been, but were not raised on direct appeal are barred from review under § 2255. See Beyle, 269 F. Supp. 3d 725; see also United States v. Frady, 456 U.S. 152, 164 (1982). However, the procedural default bar does not apply to ineffective assistance of counsel claims that are properly asserted for the first time in a § 2255 petition. Id.; see United States v. King, 119 F. 3d 290, 295 (4th Cir. 1997). Whether claiming ineffective assistance of counsel to overcome procedural default or as an independent ground for relief, the petitioner must satisfy both prongs of Strickland previously discussed in Section III. C. See Id.

Generally, Petitioner cannot raise this claim because he failed to do so on direct appeal. However, even though Petitioner did not specifically allege ineffective assistance of counsel for this claim, when construed liberally, this is Petitioner's only

avenue for potential relief. Therefore, this claim will be analyzed under the Strickland analysis.

As previously stated, the burden of proof is on the Government to prove the elements beyond a reasonable doubt. Specifically, at issue is the possession element for Counts One and Two. For Count One, the Government must prove beyond a reasonable doubt that Petitioner knowingly possessed the firearms. For Count Two, the Government must prove that Petitioner possessed stolen firearms. Petitioner contends that the Government failed to prove actual or constructive possession of the firearms.

Trooper Smith testified as to the initial traffic stop, his interaction with Petitioner, how he put Petitioner in the rear of his cruiser, how Petitioner stole his cruiser (including his firearms in the back of the cruiser), and the events that transpired for the next several hours. ECF No. 76 at 125-167.

On cross examination, defense counsel questioned Trooper Smith extensively as to whether Petitioner knowingly possessed the firearms located in the back of the cruiser. For example, Defense counsel questioned Trooper Smith if he ever showed Petitioner the back of the cruiser where the firearms were located. Id. at 168. Trooper Smith did not. Id. Defense counsel asked Trooper Smith if he kept an inventory or had pictures of items in his cruiser on the day of the incident, which he did not. Id. at 169. Defense counsel asked if Trooper Smith had any other sources to corroborate what items Trooper Smith had in his cruiser, which again, he did not. Id. at 170. Because there was about six and a half hours between Petitioner stealing the cruiser and his arrest, defense counsel questioned Trooper Smith if he had any knowledge if Petitioner stayed at the cruiser or if he walked off and someone else rummaged through the cruiser. Id. at 171-172. Trooper

11

Smith did not. Id. Defense counsel questioned Trooper Smith whether he saw Petitioner actually take the weapons from the vehicle, even though there was a working dash cam. Id. at 173. Trooper Smith acknowledged that he did not see Petitioner take the weapons from the cruiser nor does the video from the dash cam show Petitioner doing so. Id. Defense counsel asked Trooper Smith if at the time of Petitioner's arrest if he had any firearms on his person, which he did not. Id. at 174.

On the cross examination of Trooper Hill, Deputy Barney, and Cpl. Garrett, defense counsel questioned each witness regarding whether Petitioner knowingly possessed the firearms. Defense counsel questioned Trooper Hill and confirmed that when he found the firearm that he had no personal knowledge of who moved the firearm to this location nor how long it had been there. Id. at 218. Even though Deputy Barney had a limited involvement in the investigation, defense counsel confirmed that when Petitioner was arrested, nothing, including firearms, were found on his person. Id. at 198. Finally, Cpl. Garrett testified that he also had no personal knowledge who placed the firearms in the locations they were found, how the weapons got to the locations, nor how long the firearms had been in the locations.[5] Id. at 232-233. Defense counsel's extensive questioning certainly challenged whether Petitioner knowingly possessed the firearms does not fall below an objective standard of reasonableness.

Although Petitioner does not agree with the outcome of his case, a jury unanimously agreed that the Government met its burden, and Petitioner was guilty of Counts One and Two. Dissatisfaction with the outcome does not equate to defense

---

[5] Ultimately, it is important to note that even though the testimony of Troopers Smith and Hill, Deputy Barney, and Cpl. Garrett were plagued with objections, there is evidence that Petitioner actually led the officers to the weapons. Id. at 147-148, 177, 205-206, 227.

counsel's performance being deficient. As to this issue, there is insufficient evidence to conclude that defense counsel's performance fell below the objective standard of reasonableness or that Petitioner was prejudiced by defense counsel's performance. Accordingly, Petitioner fails to carry his burden under the Strickland analysis.

### IV.     RECOMMENDATION

For the foregoing reasons, I find that Petitioner's claims are without merit. Accordingly, I **RECOMMEND** that Petitioner's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Civil Action No. 3:18-CV-102, ECF Nos. 1, 5; Criminal Action No. 3:15-CR-27, ECF Nos. 111, 116] be **DENIED** and **DISMISSED WITH PREJUDICE**.

The Petitioner shall have fourteen days from the date of filing this Report and Recommendation within which to file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia. Further, because this Report and Recommendation completes the referral from the District Court, the Clerk is directed to terminate the Magistrate Judge association with this case.

Respectfully submitted this 27th day of May 2020.

*/s/ Robert W. Trumble*
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE